# Exhibit A

CASE TYPE: Other Civil

STATE OF MINNESOTA — DISTRICT COURT

COUNTY OF HENNEPIN — FOURTH JUDICIAL DISTRICT

Geoffrey LeMond and Capture Design Ventures 03, LLC,

Plaintiffs,

vs.

John Uphoff, Matt Duea, Anthony Brennan, Allen Temiz, Raw Entertainment B.V. d/b/a Roobet, Raw Entertainment Ltd. d/b/a Roobet, Packdraw Limited, Packdraw US LLC, and PDCC Services Limited,

Defendants.

File No.:

**SUMMONS**

THIS SUMMONS IS DIRECTED TO: Defendants John Uphoff, Matt Duea, Anthony Brennan, Allen Temiz, Raw Entertainment B.V. d/b/a Roobet, Raw Entertainment Ltd. d/b/a Roobet, Packdraw Limited, Packdraw US LLC, and PDCC Services Limited.

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

   Jospeh M. Windler, Esq.
   Samantha F. Carmickle, Esq.
   Winthrop & Weinstine, P.A.
   225 South Sixth Street, 3500 Capella Tower
   Minneapolis, Minnesota 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: August 20, 2025

WINTHROP & WEINSTINE, P.A.

By: s/ Joseph M. Windler
Joseph M. Windler, #0387758
Samantha F. Carmickle, #0401782

3500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
jwindler@winthrop.com
scarmickle@winthrop.com

*Attorneys for Plaintiffs*

40354803v1

CASE TYPE: Other Civil

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT

Geoffrey LeMond and Capture Design Ventures 03, LLC,

Plaintiffs,

vs.

John Uphoff, Matt Duea, Anthony Brennan, Allen Temiz, Raw Entertainment B.V. d/b/a Roobet, Raw Entertainment Ltd. d/b/a Roobet, Packdraw Limited, Packdraw US LLC, and PDCC Services Limited,

Defendants.

File No.:

**COMPLAINT**

Plaintiffs Geoffrey LeMond ("**LeMond**") and Capture Design Ventures 03, LLC ("**Capture Design**" and, together with LeMond, the "**Partnership**"), as and for their Complaint against Defendants John Uphoff ("**Uphoff**"), Matt Duea ("**Duea**"), Anthony Brennan ("**Brennan**"), Allen Temiz ("**Temiz**"), Raw Entertainment B.V. d/b/a Roobet and Raw Entertainment Ltd. d/b/a Roobet ("**Roobet**"), Packdraw Limited, Packdraw US LLC, PDCC Services Limited ("**Packdraw**") (collectively "**Defendants**"), state and allege as follows:

## INTRODUCTION

1. This case concerns Defendants' willful theft of Plaintiffs LeMond and Capture Design's trade secrets through a violation of trust and loyalty. It is apparent, as set forth herein, that the Defendants have no qualms about betraying their friends or breaking the law so long as it leads to their financial gain.

2. LeMond and Defendant Uphoff were long-time friends who created the Partnership with the intent of designing, launching, and profiting from online-gaming sites. To that end, LeMond and Uphoff worked together to raise almost $1,000,000.00 in investments to be used by the Partnership for the creation of such online-gaming sites.

3. Based in part on their pre-existing relationship, LeMond trusted Uphoff entirely and believed, to his and the Partnership's detriment, that Uphoff would maintain the secrecy of the Partnership's proprietary designs and creations.

4. In reality, Uphoff was only interested in furthering his own financial goals. To do so, Uphoff violated the trust afforded to him by his status as LeMond's friend and as co-creator of the Partnership.

5. Without LeMond or the Partnership's knowledge, teamed up with other bad actors—namely Defendants Duea, Brennan, Temiz, all of whom are executives and co-owners of the notorious online-gaming site "Roobet.com"—and conspired to steal the Partnership's trade secrets and monetize them.

6. Ultimately, Uphoff and the remaining Defendants absconded with LeMond's and the Partnership's intellectual property and launched their own online-gaming site "Packdraw.com," which is known to have generated tens of millions of dollars in annual revenue since its launch—revenue that properly belongs to LeMond and the Partnership.

7. As a result of Uphoff's deceit and the remaining Defendants' participation therein, LeMond and the Partnership have been prevented from realizing the fruits of their labor and have suffered extraordinary financial losses.

## PARTIES

8. LeMond is an individual residing in Minneapolis, Minnesota.

9. Capture Design is a Delaware limited liability company with a principal place of business located at 1999 Oak Street, Suite 4, San Francisco, California 94117 and a registered agent of Harvard Business Services, Inc. located at 16192 Coastal Highway, Lewes, Delaware 19958.

10. Upon information and belief, Defendant John Uphoff is an individual residing in Deephaven, Minnesota.

11. Upon information and belief, Defendant Matt Duea is an individual residing in Minneapolis, Minnesota.

12. Upon information and belief, Defendant Anthony Brennan is an individual residing in the State of Nevada.

13. Upon information and belief, Defendant Allen Temiz is an individual residing in the State of Florida.

14. Upon information and belief, Defendant Raw Entertainment B.V. d/b/a Roobet is an entity based in Curacao in the Dutch Antilles, Registration No. 157205, licensed to conduct online gaming operations by the Government of Curacao under License No. 8048/JAZ. Upon information and belief, Raw Entertainment B. V. d/b/a Roobet's statutory director is Executive Corporate Management B.V., 130026.

15. Upon information and belief, Defendant Raw Entertainment Ltd. d/b/a Roobet is an entity based in Cyprus, located at Voukourestiou, 25, Neptune House, 1st Floor, Flat/Office 11, Zakaki, 3045, Limassol, Cyprus. Upon information and belief, Raw Entertainment Ltd. d/b/a Roobet is a wholly owned subsidiary of Raw Entertainment B.V. d/b/a Roobet and acts as a paying and operational agent of Raw Entertainment B.V. d/b/a Roobet.

16. Upon information and belief, Packdraw Limited, Registration No. HE421735, is an entity based in Cyprus, located at Iakovou Patatsou 4a, Agios Dometios, 2362 Nicosia, Cyprus.

17. Upon information and belief, Packdraw US, LLC is a Delaware limited liability company with a registered agent of Vcorp Agent Services, Inc. located at a principal place of business located at 108 West 13th Street, Suite 100, Wilmington, Delaware 19801.

18. Upon information and belief, PDCC Services Limited is a private limited company organized in England and Wales, and its initial shareholder is Packdraw Limited.

## JURISDICTION AND VENUE

19. Venue is proper in this District pursuant to Minn. Stat. § 542.09, because Defendants Uphoff and Duea reside in Hennepin County and a substantial part of the events or omissions giving rise to this action occurred in Hennepin County.

20. This Court has personal jurisdiction over Defendants Uphoff and Duea, because they reside in Hennepin County, Minnesota and over Defendants Brennan, Temiz, Raw Entertainment B.V. d/b/a Roobet, Raw Entertainment Ltd. d/b/a Roobet, Packdraw Limited, Packdraw US, LLC, and PDCC Services Limited pursuant to Minn. Stat. § 543.19, subd. 1, because they each transact business within the State of Minnesota and committed acts, on their own or through their agents Brennan, Temiz, and Uphoff, causing injury or property damage in Minnesota.

21. This Court has subject matter jurisdiction over this action pursuant to Minn. Stat. § 484.01, subdivision 1.

## FACTUAL ALLEGATIONS

### I. LeMond and Uphoff Establish a Partnership.

22. Geoffrey LeMond and John Uphoff were close, longtime friends and business partners, having known each other since 2000, and having founded and worked on multiple startup ventures together since 2012. The relationship was characterized by high trust and confidence; for

example, LeMond was best man at Uphoff's wedding and helped Uphoff secure a job at LeMond's family business, LeMond Bikes, during Uphoff's time of need.

23. In 2021, LeMond proposed to Uphoff that they start a business venture that would develop online games of chance utilizing blockchain technology. In keeping with their respective skills, LeMond would be responsible for visual and experiential design, while Uphoff would develop technical models, software, and blockchain code. The model for the venture would be a partnership which incubated multiple games to increase their chance of market success. Uphoff agreed to join the Partnership and the two proceeded to work together as partners thereafter.

24. Between 2021 and 2022, LeMond and Uphoff solicited and accepted approximately eight hundred and forty-two thousand US dollars ($842,000.00) from various investors for the Partnership. LeMond and Uphoff did so using pitch materials that listed LeMond as the co-founder and Chief Executive Officer ("CEO") and Uphoff as co-founder and Chief Technical Officer ("CTO"). LeMond and Uphoff assured investors that they would receive a portion of the profits generated from any projects developed using invested funds.

25. Through 2021 and 2022, LeMond and Uphoff worked with others hired by the Partnership to develop games of chance under various brand and project names including, without limitation, unicorn.pizza, crash.xyz, The House, WowDAO, Packs.com, TokenWars, and Prize. The Partnership also used these names for the purposes of fundraising and operations. Specifically, the Partnership used pitch decks that contained The House, WowDAO, and Prize, and Partnership email addresses were hosted on the unicorn.pizza domain.

**II. Roobet Looks To The Parties To Expand Its Gaming Empire.**

26. Roobet is a crypto casino and online gambling company licensed in Curaçao and Malta that develops games of chance, and the websites to promote them, using both its own resources and via partnerships. Roobet's more promising projects are spun out as separate legal

entities. Roobet utilizes a network of online influencers and extensive marketing resources to attract players to its affiliated websites.

27. In 2021, during a conversation regarding one of LeMond and Uphoff's joint business ventures, Matt Duea—a fellow entrepreneur and former neighbor of LeMond—proposed a potential collaboration between Roobet and the Partnership. At the time, Duea was employed as a marketing director at Roobet and claimed to possess direct access to Roobet's founders, who were also Roobet's beneficial owners and ultimate decision-makers.

28. In 2022, Defendant Duea represented to LeMond that Duea had authority, as an executive officer of the company, to bind Roobet.

29. Around March of 2023, Roobet began holding Duea out as its CEO and "co-founder." Duea continues to hold these positions.

30. Between August of 2021 and October of 2022, Roobet and the Partnership engaged in extensive business negotiations. Negotiations were primarily conducted between LeMond and Duea, with occasional input in calls and messages from Roobet executives including Defendants Brennan and Timez. In August and September of 2021, Brennan was specifically involved in negotiations related to the building of Packs. com, a game concept in which users would purchase packs of digital prizes.

31. By June of 2022, negotiations had turned toward the Partnership's flagship game, "Prize." During these negotiations, it was agreed that the Partnership would enter into a joint venture with Roobet and its brand Tokened. LeMond and Uphoff, on behalf of the Partnership, would work full-time to develop games with Tokened and Roobet. Initial investment by Roobet into game development and marketing, including payment to the influencer marketing company Full Send, would amount to three to five million US dollars, with profits from resulting games to be split between all participants: Roobet, the Partnership, and Full Send. In other words, the

Partnership agreed to contribute game concepts, design, software code, and technical skills, and Roobet agreed to contribute extensive financial and marketing resources.

**III. Roobet Begins Direct Negotiations with Uphoff.**

32. In July of 2022, Defendants Duea and Temiz messaged LeMond to state that a deal was close at hand. Later, Duea would tell LeMond that he needed to speak with Uphoff, explaining "I've never hired a person without having a 1:1 convo with them." Up until this point, LeMond had been the primary point person for the Partnership. From then on, though, Uphoff and Duea began to communicate with each other privately, excluding LeMond and the Partnership.

33. In November of 2022, Duea met with LeMond and surprised him by saying that, in a dramatic and sudden change of plans, Roobet only wanted to hire Uphoff as a contractor. Duea stated that Uphoff's technical help was needed to fix issues Roobet was experiencing with elements of its core software infrastructure and that the resolution of these issues was the last step needed to allow the deal between the Partnership and Roobet to proceed. Relying upon this representation, LeMond agreed to allow Uphoff to join Roobet on a temporary basis, understanding that the joint venture between the Partnership and Roobet would progress more quickly with a real world demonstration of Uphoff's technical capacity and with someone within Roobet who could represent the Partnership's interests.

34. In November of 2022, Uphoff joined Roobet. At the same time, LeMond and Uphoff continued to engage on Partnership matters, including continued iterative design and strategizing related to games developed by the Partnership. When he joined Roobet, Uphoff made some technical changes which resulted in two Partnership domains, prize.xyz and wowdao.com, being controlled solely by Uphoff. As a result of these changes, among other things, LeMond lost access to his Partnership email hosted on unicorn.pizza. After multiple requests to Uphoff,

LeMond regained access to his Partnership email in January of 2023, at which point he discovered that Uphoff had deleted the parties' email history and the Partnership capitalization table.

## IV. Roobet and Uphoff Freeze LeMond and the Partnership Investors Out.

35. In early 2023, only a few months after beginning work at Roobet, Uphoff began work on a game for Roobet called Packdraw wherein users would buy digital packs of prizes of varying value. Neither LeMond nor the Partnership were made aware of the fact that Uphoff's role at Roobet had transformed from work on infrastructure issues to game design.

36. Packdraw would bear an inescapable similarity to the Partnership's game, Prize, with additional visual and game design elements taken from two other games developed by the Partnership—TokenWars and Packs.com. Upon information and belief, Defendants Brennan and Temiz directed, or otherwise supported and assisted, Uphoff to take the visual and design elements from Prize, TokenWars, and Packs, to develop Packdraw without the consent or knowledge of LeMond or the Partnership.

37. In August of 2023 Packdraw launched and was a quick success. Over the course of 2023 and into 2024, the relationship between LeMond and Uphoff grew strained, in large part because of Uphoff's neglect toward Partnership duties, including his reluctance to set a launch date for any of the games the Partnership had developed. When asked by LeMond about progress towards the Partnership's deal with Roobet, Uphoff said there had not been any. Uphoff would later claim in 2024 that Duea had instructed him to keep LeMond away from Packdraw.

## V. LeMond Learns of Uphoff's Breach.

38. In early 2024, during a visit to Uphoff's home, Uphoff told LeMond that he now had capacity to begin work on a new game for the Partnership. In doing so, Uphoff gave the impression that he was committed to the Partnership and that he was still interested in collaborating with LeMond. Uphoff shared ideas and information for the prospective game with LeMond,

including the user interface and website designs for Packdraw, which were contained in a design software called Figma.

39. On June of 2024, as part of a review of the materials Uphoff had sent, LeMond opened the Packdraw Figma file and discovered that for the past year Uphoff, on Roobet's behalf and presumably at the direction of Brennan, Temiz, and Roobet, had built and launched a game directly competitive to the suite of games developed by the Partnership, including Prize—the flagship game that the Partnership had created and offered to Roobet as part of the negotiations to create a joint venture.

40. Upon further investigation, change records from within the Packdraw Figma file confirmed that the first assets used in the file were imported by Uphoff on March 16, 2023 directly from the Partnership Figma file where designs for Prize were stored, "Final Wowdao.". *See* Figma Design Change Records attached hereto as **Exhibit A**. The Prize designs were then integrated with other designs that Roobet had commissioned, which were also based on designs created and shared by LeMond with Duea and Brennan back in 2021 when negotiating the creation of a joint venture for Packs.com (which Roobet had withdrawn from pursuing).

41. Upon information and belief, Uphoff also used software code belonging to the Partnership to develop Packdraw for Roobet.

## VI. Roobet and Uphoff Continue to Profit Off of LeMond and Partnership Investors.

42. At the time of the breach, Roobet and Packdraw were one-and-the-same. Uphoff was in the employment of Roobet when he accessed and utilized the Partnership's work product to develop Packdraw. Indeed there was no other entity he could have been working for, since Packdraw Limited, Packdraw US LLC, and PDCC Services Limited Packdraw were all incorporated after Uphoff's breach. To this day, Roobet's business is extensively commingled with

Packdraw, providing Packdraw with financial and legal support and managerial oversight, and Duea is both the CEO of Roobet and, upon information and belief, a beneficial owner of Packdraw.

43. Uphoff remains the CTO of Packdraw and has claimed that, as a ten percent (10%) owner of Packdraw, he receives profit sharing. As of April 21 2025, Packdraw has seen more than two hundred and fifty nine million US dollars ($259,000,000.00) in user deposits. This figure is consistent with Uphoff's statement to LeMond and others on November 21, 2024, that Packdraw.com sees "about 150M in deposits per year." For their part, LeMond and the Partnership have received nothing in return for the use of their intellectual property and their investment of nearly one million US dollars ($1,000,000.00).

## COUNT I
## BREACH OF FIDUCIARY DUTY
## (AGAINST UPHOFF)

44. Plaintiffs re-allege and incorporate the allegations in Paragraphs 1 through 43 as though fully set forth herein.

45. Uphoff owed fiduciary duties to LeMond as a close friend and business partner, and to the Partnership and its investors as the Partnership's co-founder and CTO.

46. Uphoff breached these fiduciary duties by virtue of his conduct described herein, including but not limited to:

a. Usurping the Partnership's corporate opportunity with Roobet for the benefit of himself and Roobet;

b. Illegally using confidential and copyrightable work product belonging to the Partnership for the benefit of himself and Roobet;

c. Misleading LeMond into thinking that he was acting in the interests of the Partnership to promote the Partnership while working at Roobet;

d. Failing to disclose his work on a product directly competitive to the Partnership's flagship game Prize;

e. Failing to include LeMond and the Partnership in business opportunities that arose directly from his role in and work for the Partnership.

47. Uphoff's breaches of his fiduciary duties are the direct and proximate cause of actual and consequential damages to LeMond and the Partnership. These actual and consequential damages include, among other things:

a. Loss of the Partnership's anticipated joint venture with Roobet, and the curtailing of the possibility of future deals with Roobet;

b. Loss of revenue from the games created using LeMond and the Partnership's intellectual property;

c. The deliberate stymying of the Partnership's attempts to launch its games; and

d. The subsequent decay in value of the games developed by the Partnership.

48. The value of the actual and consequential damages suffered by LeMond and the Partnership as a direct and proximate result of Uphoff's breaches of his fiduciary duties, LeMond and the Partnership have suffered damages in excess of fifty thousand US dollars ($50,000.00), the exact amount to be established in these proceedings.

**COUNT II**
**CIVIL CONSPIRACY**
**(AGAINST DUEA, ROOBET, AND UPHOFF)**

49. Plaintiffs re-allege and incorporate the allegations in Paragraphs 1 through 48 as though fully set forth herein.

50. Duea, Roobet, and Uphoff knew that Uphoff and LeMond were co-founders and business partners who owed each other fiduciary duties. Duea, Roobet, and Uphoff also knew that Uphoff, as the Partnership's CTO, owed the Partnership and its investors fiduciary duties.

51. Duea, Roobet, and Uphoff worked together to achieve Uphoff's breach of fiduciary duties.

52. As set forth above, Uphoff breached his fiduciary duties to LeMond and the Partnership.

53. As a direct and proximate result of Duea, Roobet, and Uphoff's conspiracy to achieve Uphoff's breach of fiduciary duty, LeMond and the Partnership have suffered damages in excess of fifty thousand US dollars ($50,000.00), the exact amount to be established in these proceedings.

**COUNT III**
**AIDING AND ABETTING UPHOFF'S BREACH OF FIDUCIARY DUTY**
**(AGAINST DUEA AND ROOBET)**

54. Plaintiffs re-allege and incorporate the allegations in Paragraphs 1 through 53 as though fully set forth herein.

55. Duea and Roobet knew that Uphoff and LeMond were co-founders and business partners who owed each other fiduciary duties. Duea and Roobet also knew that Uphoff, as the Partnership's CTO, owed the Partnership and its investors fiduciary duties.

56. Duea and Roobet provided Uphoff with substantial assistance and encouragement to secure Uphoff's breach of fiduciary duty.

57. As set forth above, Uphoff breached his fiduciary duties to LeMond and the Partnership.

58. As a direct and proximate result of Duea and Roobet's aiding and abetting Uphoff's breach of fiduciary duty, LeMond and the Partnership have suffered damages in excess of fifty thousand US dollars ($50,000.00), the exact amount to be established in these proceedings.

## COUNT IV
## VIOLATION OF THE MINNESOTA UNIFORM TRADE SECRETS ACT, MINN. STAT. § 325C.01, *ET SEQ.*
## (AGAINST ALL DEFENDANTS)

59. Plaintiffs re-allege and incorporate the allegations in Paragraphs 1 through 58 as though fully set forth herein.

60. LeMond and the Partnership created and own confidential information including, but not limited to digital programs, visual design, player incentive and game mechanic design, economic models, user interface and user experience design, software code, software processes and system architecture, competitor research, blockchain code, and methods and techniques for applying blockchain technologies to games of chance (collectively, "**Trade Secrets**").

61. The Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

62. LeMond and the Partnership took reasonable efforts under the circumstances to maintain secrecy of the Trade Secrets—only LeMond and Uphoff who developed the Trade Secrets together were aware of the Trade Secrets.

63. Defendants obtained the Trade Secret through improper means, namely Uphoff's breach of his duty to maintain secrecy of the Trade Secrets.

64. At the time Defendants obtained the Trade Secrets, they knew or had reason to know that the Trade Secrets were acquired through improper means.

65. Defendants misappropriation of the Trade Secrets was willful and malicious.

66. As a direct and proximate result of Defendants' misappropriation of the Trade Secrets, LeMond and the Partnership have suffered damages in excess of fifty thousand US dollars ($50,000.00), in addition to attorneys' fees, costs, and disbursements, the exact amount to be established in these proceedings.

67. In addition to actual damages, pursuant to Minn. Stat. § 325C.03(b), Plaintiffs are entitled to exemplary damages in an amount up to twice the amount of actual damages.

**COUNT V**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836, *ET SEQ.***
**(AGAINST ALL DEFENDANTS)**

68. Plaintiffs re-allege and incorporate the allegations in Paragraphs 1 through 67 as though fully set forth herein.

69. LeMond and the Partnership created and own the Trade Secrets.

70. The Trade Secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce. Specifically, the Trade Secrets are related to an multi-national, multi-state, online gaming platform.

71. The Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

72. LeMond and the Partnership took reasonable efforts under the circumstances to maintain secrecy of the Trade Secrets—only LeMond and Uphoff who developed the Trade Secrets together were aware of the Trade Secrets.

73. Defendants obtained the Trade Secrets through improper means, namely Uphoff's breach of his duty to maintain secrecy of the Trade Secrets.

74. At the time Defendants obtained the Trade Secrets, they knew or had reason to know that the Trade Secrets were acquired through improper means.

75. Defendants misappropriation of the Trade Secrets was willful and malicious.

76. Defendants were unjustly enriched in an amount in excess of fifty thousand US dollars ($50,000.00) as a direct and proximate result of their misappropriation of the Trade Secrets.

77. As a direct and proximate result of Defendants' misappropriation of the Trade Secrets, LeMond and the Partnership have suffered damages in excess of fifty thousand US dollars ($50,000.00), in addition to attorneys' fees, costs, and disbursements, the exact amount to be established in these proceedings.

78. Defendants were unjustly enriched in an amount in excess of fifty thousand US dollars ($50,000.00) as a direct and proximate result of their misappropriation of the Trade Secrets.

79. As a direct and proximate result of Defendants' misappropriation of the Trade Secrets, LeMond and the Partnership have suffered damages in excess of fifty thousand US dollars ($50,000.00), in addition to attorneys' fees, costs, and disbursements, the exact amount to be established in these proceedings.

80. In addition to actual damages, pursuant to 18 U.S.C. § 1836(b)(3)(C), LeMond and Uphoff are entitled to exemplary damages in an amount up to twice the amount of actual damages.

## COUNT VI
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

81. Plaintiffs re-allege and incorporate the allegations in Paragraphs 1 through 80 as though fully set forth herein.

82. Defendants knowingly received, retained, and continue to use improperly obtained Partnership property without compensation despite previously engaging in extensive business negotiations for use of the very same Partnership property.

83. As a result of Defendants' receipt, retention, and continued use of the Partnership's property, Defendants have received more than five million US dollars ($5,000,000.00), the exact amount to be determined during these proceedings.

84. It would be unfair and inequitable to allow Defendants to retain the millions of dollars in profits and other benefits they have received from use of the Partnership's property without any payment to LeMond and the Partnership.

85. Plaintiffs are entitled to judgment against Defendants in an amount in excess of fifty thousand US dollars ($50,000.00), the exact amount to be determined in these proceedings, to compensate for the value and benefits Defendants unjustly received and disgorgement of all net profits received by Defendants in connection with the Partnership's property.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs request an Order, in favor of Plaintiffs and against Defendants as follows:

1. Awarding Plaintiffs monetary damages in an amount in excess of fifty thousand US dollars ($50,000.00), the exact amount to be determined in these proceedings;

2. Awarding Plaintiffs punitive damages in an amount equal to twice the actual damages awarded in connection with Counts IV and V of Plaintiffs' Complaint;

3. Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in connection with this action; and

4. Awarding Plaintiffs such other and further relief as the Court deems just and equitable.

Dated: August 20, 2025

WINTHROP & WEINSTINE, P.A.

By: *s/ Joseph M. Windler*

Joseph M. Windler, #0387758
Samantha F. Carmickle, #0401782

3500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
jwindler@winthrop.com
scarmickle@winthrop.com

***Attorneys for Plaintiffs***

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: August 20, 2025

WINTHROP & WEINSTINE, P.A.

By: *s/ Joseph M. Windler*
Joseph M. Windler, #0387758
Samantha F. Carmickle, #0401782

3500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
jwindler@winthrop.com
scarmickle@winthrop.com

***Attorneys for Plaintiffs***

40306109v4